UNITED STATES of America, Plaintiff-Appellee,

v.

Bladimir DEVILA, Avery Lightborne, Jurgen Preciado, Rauldino Rivera, Cesar Vallecilla-Orbio, Defendants-Appellants.

No. 98-4374.

United States Court of Appeals,

Eleventh Circuit.

June 27, 2000.

Appeals from the United States District Court for the Southern District of Florida.(No. 98-00565-CR-ASG), Alan S. Gold, Judge.

Before COX, HILL and MESKILL[*], Circuit Judges.

PER CURIAM:

In 1996, defendants/appellants Jurgen Preciado, Bladimir Devila, Rauldino Rivera, Cesar Vallecilla-Orobio and Avery Lightborne were indicted by a federal grand jury in Miami, Florida with conspiracy to possess with intent to distribute marijuana, while crewmembers on board the vessel "Marbella II", a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.App. §§ 1903(a), (j), and (g) (Count I);  and possession with intent to distribute marijuana, in violation of 46 U.S.C.App. §§ 1903(a) and (g), and 18 U.S.C. § 2 (Count II).

After a ten-day jury trial in 1997, the jury returned guilty verdicts against all five defendants/appellants on both counts charged.  Defendant/appellant Rivera filed post-trial motions for judgment of acquittal (Fed. R.Crim.Proc.29), new trial (Fed. R.Crim.Proc.33) and arrest of judgment (Fed. R.Crim.Proc.34) on the basis that the government failed to prove beyond a reasonable doubt that the United States had jurisdiction over the vessel at issue, Marbella II.[1]

---

[*]Honorable Thomas J. Meskill, U.S. Circuit Judge for the Second Circuit, sitting by designation.

[1]Defendant/appellant Rivera's motion was adopted by defendants/appellants Lightborne, Vallecilla-Orobio and Preciado in three separate orders.  Defendant/appellant Devila filed a separate motion for judgment of acquittal and a separate motion for new trial. In his motion for judgment of acquittal, defendant/appellant Devila stated that he also wished to adopt defendant/appellant Rivera's motion.

In a thoughtful, well-reasoned, twenty-four (24) page opinion dated January 13, 1998, the district court denied all post-trial motions. Final judgments and commitment orders were entered one month later. The defendants/appellants appeal from these final orders.

The only issue raised upon appeal that merits discussion is the same issue addressed in defendants'/appellants' post-trial motions, which is, whether the government failed to prove beyond a reasonable doubt that the United States had jurisdiction over the vessel Marbella II.[2] For the reasons stated in Sections I and II of the district court order of January 13, 1998, by the Honorable Stanley Marcus, then district judge, denying defendants'/appellants' post-trial motions, which sections are attached hereto as an appendix, the defendants'/appellants' final judgments of conviction and commitment orders are AFFIRMED.

AFFIRMED.

## APPENDIX

UNITED STATES OF AMERICA,

Plaintiff,

v.

JURGEN PRECIADO, et al.,

Defendants.

NO. 96-0534-CR-MARCUS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

ORDER

---

[2]All remaining issues raised are devoid of merit and affirmed without opinion. *See* 11th Cir. R. 36-1.

THIS CAUSE comes before the Court upon Defendant Rauldino Rivera's Motion for Judgment of Acquittal, Motion for New Trial, and Motion for Arrest of Judgment, filed May 14, 1997[1]; Defendant Bladimir Devila's Motion for Judgment of Acquittal, filed May 19, 1997; and Defendant Bladimir Devila's Motion for New Trial, filed May 19, 1997. Defendant Rauldino argues that he is entitled to an acquittal, a new trial, and/or an arrest of judgment because the government failed to prove beyond a reasonable doubt that the United States had jurisdiction over

the vessel at issue. Defendant Devila asserts that he is entitled to an acquittal because the evidence against him was insufficient to sustain a conviction. Devila also claims that he is entitled to a new trial on the basis of a remark the prosecutor made at trial concerning his failure to deny knowledge of the contraband on the vessel prior to his arrest. The Court took argument on the motions on August 11, 1997. After a thorough review of the record and pleadings, and having considered the arguments of counsel, Defendant Rauldino Rivera's Motion for Judgment of Acquittal, Motion for New Trial, and Motion for Arrest of Judgment is DENIED; Defendant Bladimir Devila's Motion for Judgment of Acquittal is DENIED; and Defendant Bladimir Devila's Motion for New Trial is DENIED.

I.

On May 26, 1990, a United States Coast Guard Cutter, the U.S.S. Lewis B. Puller, stopped a small vessel in international waters between 30 and 70 miles south of the coast of Haiti. The vessel, approximately 30 feet in length, bore the name "Marbella II" and had two different numbers painted on its hull: (1) ABS46 or AB546 or AB54G; and (2) AGSI2546. The vessel's five passengers were Defendants Jurgen Preciado, Bladimir Devila, Rauldino Rivera, Cesar Vallecilla-Orobio, and Avery Lightborne. According to the

---

[1] Defendant Rivera's motion was adopted by Defendants Lightborne, *see* Order dated May 21, 1997; Vallecilla-Orobio, *see* Order dated May 29, 1997; and Preciado, *see* Order dated May 29, 1997. Defendant Davila states in his Motion for Judgment of Acquittal that he also wishes to adopt Rivera's motion. *See* Mot. for J. of Acquittal ¶ 10.

**3**

evidence presented at trial by the government, Lightborne claimed to be the master of the vessel and initially stated that the boat was registered in the Bahamas; later he changed that account and claimed that the ship was registered in Haiti, and finally he claimed that it was registered in Venezuela. Meanwhile, Preciado told the Coast Guard that he was the true master of the vessel, and that the boat was registered in Venezuela. Moreover, when asked, none of the De`

APPENDIX—Continued

fendants was able to produce any registry documents and none was found on the vessel. The crew claimed that the purpose of their voyage was fishing, although the only fishing equipment on the vessel was a tangled net that was bleached from the sun, appearing not to have been used recently. Preciado claimed that the cargo on the vessel consisted of cigarettes, and removed a Marlboro box from one of the holds. He pulled a brick of a green leafy substance that he claimed was tobacco from the box and held it up for the Coast Guard to see. Suspecting that the substance was marijuana, the Coast Guard boarding party returned to the U.S.S. Puller to verify the vessel's registration with the government of Venezuela and to seek permission to search the vessel. While awaiting a response from Venezuela, one Coast Guard officer observed Preciado, Lightborne, and Davila retrieving food and beverages from the forward hold.

The Coast Guard requested that the Venezuelan government determine whether or not they had registered a vessel under the name "Mar Bella II," "Mar Bella 2," "Marbella II," or "Marbella 2," or under any of three possible variations on the number painted on one side of the hull (ABS46, AB54G, or AB546). The Coast Guard never asked the government of Venezuela to check the possible registration of a boat under AGSI2546, the number painted on the other side of the "Marbella II" 's hull.

After receiving a statement from the Venezuelan government refuting registry, the Coast Guardsmen returned to the "Marbella II," boarded it, and ran field tests on the bricks, which showed the presence of marijuana. They arrested all five crew members and searched the vessel, finding 63 bales of marijuana weighing 3,906 pounds stacked to the top of the forward and midship holds.

**4**

They also found that the only food and beverages on board were stored along with the marijuana in the forward hold. The Coast Guard then destroyed the vessel upon determining it to be unseaworthy.

On June 6, 1996, a federal Grand Jury indicted all five Defendants for conspiracy to "possess with intent to distribute a Schedule I narcotic controlled substance, that is, a mixture and substance containing a detectable amount of marijuana, in violation of Title 46, United States Code Appendix, Section 1903(a)," (j), and (g) "while on board the vessel 'Marbella II', a vessel subject to the jurisdiction of the United States" (Count I). The indictment also charged Defendants with possession of marijuana "in violation of Title 46, United States Code Appendix, Section 1903(a), (g)" "while on board the vessel 'Marbella II', a vessel subject to the jurisdiction of the United States" (Count II). Approximately five months prior to trial, the government provided Defendants with the following evidence in accordance with the District Court's Standing Discovery Order: (1) a videotape of the Coast Guard's seizure of the vessel, which showed that both AGSI2546 and ABS46 (or AB546 or AB54G) were painted on its hull; and (2) a copy of the Secretary of State's Certification attesting that the Venezuelan government had refuted registry of any vessel under the names "Mar Bella II," "Mar Bella 2," "Marbella II," or "Marbella 2," or the numbers ABS46, AB546, or AB54G.

A jury trial of the Defendants began on April 7, 1997. In order to prove that the United States had jurisdiction over the "Marbella II," the government introduced into evidence the Secretary of State's Certification that Venezuela had refuted registry of the vessel. The Certification consisted of a statement by Joseph Conroy, a Coast Guard Liaison Officer to the Bureau of Internation`

al Narcotics and Law Enforcement who had been designated by the Secretary of State to make certifications as provided under section 3(c) of the Maritime Drug Law Enforcement Act, *see* 46 U.S.C. app. § 1903 (1996), as well as a statement by Secretary of State Warren Christopher attesting to Conroy's official position. In Conroy's certification, he stated that Captain Davis of the Defense Attache's Office of the United States Embassy in Caracas, Venezuela, reported that Capitan Pedro San Miguel Zatarain, Operations Officer for the Venezuelan Coast Guard, "had—on behalf of the Government of Venezuela—checked Venezuelan registry records for the official numbers ABS46, AB54G, and AB546, and reported that no vessels with the aforementioned names or numbers were registered in Venezuela." *See* Government Exh. 15.

On April 10, 1997, during the course of the trial, Preciado's counsel provided the government for the first time with copies of documents purporting to show that the "Marbella II" was in fact registered in Venezuela under the number AGSI2546.  On April 14, 1997, Rivera's counsel advised the Court that he intended to introduce those documents into evidence, claiming that he also had just received them on April 10.  The government objected to their introduction on the following grounds:  (1) Preciado should have produced the documents during pre-trial discovery, since he possessed them at least two months prior to trial; (2) Defendants should have attempted to obtain admissible evidence about the boat's true registration before trial, since all five had pre-trial access to the videotape clearly showing both numbers painted on the vessel's hull and to the Certification showing that the Coast Guard had only checked one number with the Venezuelan government;  and (3) the documents were inadmissible because they lacked proper cer`

APPENDIX—Continued

tification and the government had no reasonable opportunity to investigate their authenticity and accuracy. In the middle of the trial, we granted Defendants a two-day continuance to seek authentication of the documents;  they were unsuccessful, and the evidence was excluded on foundational grounds.  *See* Fed.R.Evid. 902(3).  Defendants presented the videotape and the Certification to the jury, arguing, among other things, that the United States lacked jurisdiction over the vessel based on its failure to investigate the possible registration of the vessel in Venezuela under the number AGSI2546.  The jury convicted all five Defendants of both counts charged.

After the trial, the government of Venezuela retroactively authorized the United States to board the "Marbella II" and to enforce United States law against drug trafficking, assuming that the vessel was registered in Venezuela.  *See* Government's Omnibus Resp. to Defs.' Mots. for J. of Acquittal, New Trial, and Arrest of J., Attach.  C, letter from Rear Admiral Jorge S. Zavarce, Venezuelan Coast Guard, to Captain Richard E. Davis, United States Navy. The Venezuelan government subsequently confirmed the registration of a vessel named "Marbella II" under the number AGSI2546.  *See* Rivera's Mot. for J. of Acquittal, Mot. for

**6**

New Trial, and Mot. for Arrest of J., Attach. An American naval officer in the United States Embassy in Venezuela sent a memorandum to the State Department confirming the registry, but stating that a Venezuelan Coast Guard officer claimed that on May 26, 1996, "these documents were not able to be located at the Port Captain's Office nor in the Ministry of Transportation." *See* Government's Omnibus Resp. to Defs.' Mots. for J. of Acquittal, New Trial, and Arrest of J., Attach. A. The Captain of the United States Navy also received a letter

APPENDIX—Continued

dated June 26, 1997, from Rear Admiral Joel Antonio Rodriguez, Director General of the Education Sector, stating that at the time of the United States Coast Guard's inquiry about the Venezuelan registration of a vessel named "Marbella II," the Venezuelan government investigated appropriately and was informed that *no* vessel with that name was registered in Venezuela. *See id.,* Attach. B.

II.

Defendant Rivera filed a Motion for Judgment of Acquittal, Motion for New Trial, and Motion for Arrest of Judgment on May 14, 1997, claiming that the United States lacked jurisdiction over the "Marbella II" because it was not a stateless vessel. The government responds that the "Marbella II" met the definition of a stateless vessel under the applicable statute, and that the evidence presented at trial amply supported the jury's finding that the vessel was indeed subject to United States jurisdiction.

To begin, under Federal Rule of Criminal Procedure 29, a court may set aside a guilty verdict and enter judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed. R.Crim. Proc. 29(a),(c). According to the Eleventh Circuit:

> In deciding a Rule 29 motion for judgment of acquittal, a district court must "determine whether, viewing all the evidence in the light most favorable to the Government and drawing all inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."

*United States v. Grigsby,* 111 F.3d 806, 833 (11th Cir.1997)(quoting *United States v.*

APPENDIX—Continued

*O'Keefe,* 825 F.2d 314, 319 (11th Cir.1987)). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a

**7**

reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982)[2].

In this case, 46 U.S.C. app. § 1903 (1996), the statute under which the government charged Defendants, stated in pertinent part:

(a) Vessels of United States or vessels subject to jurisdiction of United States

It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

. . . .

(c) "Vessel of the United States" defined

(1) For purposes of this section, a "vessel subject to the jurisdiction of the United States" includes—

(A) a vessel without nationality;

(B) a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the 1958 Convention on the High Seas;

APPENDIX—Continued

(C) a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States;

(2) For purposes of this section, a "vessel without nationality" includes—

(A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed ....

---

[2]The Eleventh Circuit has adopted as binding precedent all decisions of Unit B of the former Fifth Circuit Court of Appeals. *See Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

46 U.S.C. app. § 1903 (1996). At the time of Defendants' trial, under this Circuit's controlling precedent, jurisdiction under the statute was an element of the offense to be decided by the jury.[3] *See United States v. Medina,* 90 F.3d 459, 464 (11th Cir.1996).

On the record in the present case, viewing all the evidence in the light most favorable to the government, we hold that a reasonable juror could have concluded beyond a reasonable doubt that the "Marbella II" was a vessel without nationality under 46 U.S.C. app. § 1903 (1996). On the one hand, Defendants presented the jurors with evidence that the number AGSI2546 was painted on the hull of the "Marbella II," and they argued to the jury that the government of Venezuela did not refute registry of a vessel registered under this number. Defendants did not present evidence that the "Marbella II" was in fact registered in Venezuela, or that the vessel at issue in this case was in fact the same vessel as that registered in Venezuela under the number AGSI2546.

On the other hand, the government presented the jury with the following evidence: (1) the vessel had two different numbers painted on its hull; (2) the painted number on one side was unclear and peeling; (3) the vessel contained no documents concerning its registration; (4) none of the crew members

APPENDIX—Continued

produced any documents concerning the vessel's registration; (5) Defendant Lightborne notably claimed at first that he was the master of the vessel which was registered in the Bahamas, then, altering his account, claimed that it was of Haitian registry, and finally claimed that it was registered in Venezuela; (6) the Venezuelan government unambiguously refuted registry of a vessel under one of the two numbers painted on the hull; and (7) the government of Venezuela also clearly refuted registry of a vessel under the names "Marbella II," "Marbella 2," "Mar Bella II," and "Mar Bella 2." Defendants' assertion that the government's evidence was "factually wrong" is itself incorrect. The government did not introduce evidence that no vessel

---

[3]The statute was amended in 1996; jurisdiction is now a preliminary issue of law "to be determined solely by the trial judge" rather than the jury. 46 U.S.C. app. § 1903(f) (1997).

**9**

was registered in Venezuela under the number AGSI2546; rather, the evidence showed that Defendants attempted to deceive the Coast Guard about the vessel's registration, and that the government of Venezuela refuted registry of a vessel under the name "Marbella II" and under one of the two numbers on its hull.[4] On this record, we are not prepared to find that no reasonable juror could have concluded, in light of all of the evidence presented, that the "Marbella II" was a vessel whose captain's claim of registry had been refuted.

Nor are Defendants entitled to a new trial. Under Federal Rule of Criminal Procedure 33, a court may grant a motion for new trial on one of two grounds. First, a court may grant the new trial "in the interest of justice" if the motion is filed within 7 days after the verdict. Fed. R.Crim. Proc. 33. Second, a court may grant a new trial on the basis of

APPENDIX—Continued

newly discovered evidence. *Id.* According to the Eleventh Circuit:

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Schlei,* 122 F.3d 944, 991 (11th Cir.1997)(citing *United States v. Gates,* 10 F.3d 765, 767 (11th Cir.1993), *modified;* 20 F.3d 1550 (11th Cir.1994)). " 'The failure to satisfy any one of these elements is fatal to a motion for a new trial.' " *Id.*(quoting *United States v. Lee,* 68 F.3d 1267, 1274 (11th Cir.1995)). Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and "should be granted only with great caution." *United States v.. Garcia,* 13 F.3d 1464, 1472 (11th Cir.1994)(quoting *United States v. Johnson,* 713 F.2d 654, 661 (11th Cir.1983)); *see also United States v.*

---

[4]We do not agree with the government's assertion that a certification of statelessness by the Secretary of State conclusively proves jurisdiction over a vessel, even where there is evidence that the vessel is in fact registered in a foreign country. *See* Government's Omnibus Resp. in Opposition to Defs.' Mots. for J. of Acquittal, New Trial, and Arrest of J. 8-9, 12-14 (citing *United States v. Romero,* 32 F.3d 641 (1st Cir.1994)). Under the law of this Circuit, certification constitutes rebuttable prima facie evidence of the facts certified. *See United States v. Rojas,* 53 F.3d 1212, 1214-15 (11th Cir.1995); *United States v. Aikins,* 946 F.2d 608, 615 (9th Cir.1990).

*Hall,* 854 F.2d 1269, 1271 (11th Cir.1988); *Bentley v. United States,* 701 F.2d 897, 898 (11th Cir.1983). Indeed, the defendant bears the burden of justifying a new trial. *See DiBernardo,* 880 F.2d at 1224.

Defendants claim that they are entitled to a new trial under Rule 33 either in the interest of justice or on the basis of newly discovered evidence. The government re- APPENDIX—Continued

sponds that Defendants have made no showing that the interest of justice requires a new trial, and that Defendants have failed to prove all of the elements required under the Eleventh Circuit's test for a new trial based on newly discovered evidence. We agree that Defendant's motion fails under Rule 33.

In our view, the interest of justice would be ill served by awarding Defendants a new trial for several reasons. First, we find the evidence established that the Defendants took overt actions designed to frustrate the Coast Guard's efforts to ascertain the nationality of the vessel. They purposefully deceived the Coast Guard by offering conflicting and false statements concerning the identity of the master of the vessel, the purpose of their voyage, and, most notably, the registry of the vessel. Furthermore, their vessel had two different numbers painted on its hull and contained no documents concerning its registration. Second, Defendants made no efforts before trial to investigate the true registration of the vessel in spite of the fact that they had notice long before trial that the Venezuelan government had only refuted the registry of *one* of the two numbers painted on the hull of the boat. Finally, the Venezuelan government has retroactively authorized the United States to exercise jurisdiction over the "Marbella II" by consenting to the boarding. In sum, to grant Defendants a new trial would be to reward their deception and their negligence on the basis of the government's failure to follow a procedure designed to protect the interests of a foreign sovereign nation which has unambiguously waived such protection. Surely the interest of justice does not require this of us.

APPENDIX—Continued

Defendants have likewise failed to meet the requirements of a new trial on the basis of newly discovered evidence. Specifically, the motion fails three parts of the Eleventh Circuit's test under Rule 33. First, Defendants have failed to show that the evidence concerning the registration of the "Marbella II" in

**11**

Venezuela was indeed newly discovered. "Newly available information does not satisfy the newly discovered criteria." *United States v. Soghanalian,* 784 F.Supp. 860, 863 (S.D.Fla.1992). In *United States v. DiBernardo,* two co-defendants moved for a new trial under Rule 33 on the basis that a third co-conspirator who had not been willing to testify at their trial due to the possibility of self-incrimination was prepared to offer exculpatory testimony post-trial. 880 F.2d 1216 (11th Cir.1989). The Court found that since the co-defendants knew of the third co-conspirator's proposed testimony prior to trial, the testimony was not newly discovered under Rule 33. *See id.* at 1224; *see also United States v. Metz,* 652 F.2d 478 (5th Cir. Unit A Aug.1981)[5]. In the present case, all five Defendants knew about the "Marbella II" 's possible registration in Venezuela under the number AGSI2546 during trial because they requested a continuance on that basis. Although the evidence about the registration may not have been available in an admissible form during the trial, it surely was discovered at that time. Thus, Defendant's motion fails the first prong of the test for a new trial under Rule 33.

Second, Defendants have not shown that the new evidence, namely the documents confirming registry of the "Marbella II" in Venezuela under the number AGSI2546, could not have been discovered before trial with due diligence. All of the Defendants had

APPENDIX—Continued

access to the videotape showing both numbers on the hull of the "Marbella II" at least five months before trial. All of the Defendants also had copies of the Secretary of State's Certification well before trial showing that Venezuela had only refuted registry of one of the two numbers on the Marbella II's hull. Counsel for Preciado admits that he possessed documents reflecting the true registration number of the "Marbella II" more than one month before trial. *See* Tr. 8/11/97 20:14-21. *See* Tr. 8/11/97 8:19-9:23. It was the submission of these very documents to the government of Venezuela that led to the newly discovered evidence. Had Defendants

---

[5]In *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**12**

exercised due diligence before trial, they would have investigated the discrepancy between the numbers on the hull of the "Marbella II" and the numbers on the Certification. Had they exercised due diligence, they would not have waited until after trial commenced to submit for the first time the forms showing the Marbella II's true registration number to the Venezuelan government for authentication. Counsel for Vallecilla-Orobio concedes as much. *See* Tr. 8/11/97 8:19-9:23. Thus, Defendant's motion fails the second prong of the Rule 33 test for a new trial.

Third, and perhaps most important, Defendants are not entitled to a new trial because the "newly discovered" evidence would not be likely to result in an acquittal. The government could establish United States jurisdiction over the "Marbella II" under either of two theories: consent or assimilation to statelessness. The statute under which Defendants are charged provides that a vessel is subject to United States jurisdiction if it is

APPENDIX—Continued

"a vessel registered in a foreign nation where the flag nation has *consented* or waived objection to the enforcement of United States law by the United States." 46 U.S.C. app. § 1903(c)(1)(C) (1996)(emphasis added). The statute requires the consent of a vessel's flag nation for jurisdiction to protect the interest of that flag nation and international comity, not the interest of the individuals aboard the vessel. *See United States v. Gonzalez,* 776 F.2d 931, 940 n. 14 (11th Cir.1985). For the individuals aboard a vessel, "[t]he timing of consent makes no constitutional difference since evidence obtained from a boarding premised on anticipated consent which never materializes would have to be excluded." *United States v. Reeh,* 780 F.2d 1541, 1547 (11th Cir.1986). Thus, while the individuals may challenge jurisdiction over a vessel on the basis that the flag nation failed to consent before trial, they may not do so on the basis that the flag nation's consent was obtained after the vessel was boarded. *See United States v. Rasheed,* 802 F.Supp. 312, 321-23 (D.Hawai'i 1992)(citing *United States v. Mena,* 863 F.2d 1522 (11th Cir.1989)(finding jurisdiction based on consent by Honduras after search) and *United States v. Gonzalez,* 776 F.2d 931 (11th Cir.1985)(same)). Applying this

**13**

principle in *United States v. Reeh,* the Eleventh Circuit rejected the argument made by the defendants that retroactive consent was ineffectual, finding that consent by the United Kingdom prior to trial but after the search of a British vessel was sufficient to establish United States jurisdiction over the vessel. *See id.*[6]; *see also United States v. Sainsbury-Suarez,* 797 F.2d 931, 934 (11th Cir.1986); *United States v. Barrio Hernandez,* 655 F.Supp. 1069, 1071 (D.P.R.1987).

In the present case, the government of Venezuela has unambiguously consented to

APPENDIX—Continued

the enforcement of United States law by the United States against the crew of the "Marbella II." *See* Government's Omnibus Resp. to Defs. Mots. for J. of Acquittal, New Trial, and Arrest of J., Attach. C. This consent was obtained long before any retrial, and therefore would be sufficient evidence to establish United States jurisdiction over the "Marbella II." No doubt, if the Venezuelan government had initially concluded the vessel was actually registered, it would have given consent to board at the outset. At all events, we cannot say on this record that a jury would likely acquit on these proffered jurisdictional grounds.

The government could also establish jurisdiction at a retrial by showing that the "Marbella II" is "a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the 1958 Convention on the High Seas." 46 U.S.C. app. § 1903(c)(1)(B) (1996). A vessel is assimilated to statelessness if it " 'sails under the flags of two or more States, using them according to convenience' or falsely claims a nationality other than that of the country in which it is registered." *United States v. Ayarza-Garcia,* 819 F.2d 1043, 1046 (11th Cir.1987)(quoting Convention on the High Seas, Art. 6(2)). A vessel may also be deemed assimilated to statelessness if the master of the vessel makes more than one claim of registry. *See United States v. Garate-Vergara,* 942 F.2d 1543, 1555 (11th Cir.1991), as amended by *United States v. Lastra,* 991 F.2d 662 (11th Cir.1991)(citing *United States v. Gonzalez,* 810 F.2d 1538, 1541 (11th Cir.1987);

---

[6]In that case, the Court found jurisdiction over the vessel under 21 U.S.C. § 955a(b), the predecessor to 46 U.S.C. app. § 1903.

**14**

*United States v. Alvarez-Mena,* 765 F.2d 1259, 1264 n. 8 (5th Cir.1985)). The government could again present evidence, as it did at the first trial, that Lightborne, claiming to be the master of the vessel, at first told the Coast Guard that the "Marbella II" was registered in the Baha`

mas, then claimed it was registered in Haiti, and finally claimed it was of Venezuelan registry. The jury could then find that Lightborne's multiple false claims of registry gave rise to United States jurisdiction over the "Marbella II" as a vessel assimilated to statelessness. Counsel for Vallecilla-Orobio conceded that the government could have presented this jurisdictional argument at the first trial based on the facts of the case. *See* Tr. 8/11/97 42:11-4. Thus, the jury in a new trial if presented with all the new evidence would not likely acquit Defendants on jurisdictional grounds. In short, Defendants are not entitled to a new trial under Rule 33.

Finally, Defendants are not entitled to an arrest of judgment. Under Rule 34 of the Federal Rules of Criminal Procedure, "[t]he court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." Defendants move for an arrest of judgment on the grounds that the United States did not have jurisdiction over the "Marbella II." For the reasons discussed at length above, the evidence presented amply supported the jury's decision that jurisdiction properly lay with

\* \* \* \* \* \*

the United States. *See* discussion *infra.* Thus, Rivera's Motion for Judgment of Acquittal, Motion for New Trial, and Motion for Arrest of Judgment must be and is DENIED.

\* \* \* \* \* \*

It is therefore

ORDERED AND ADJUDGED that the following motions are DENIED: (1) Defendant Rauldino Rivera's Motion for Judgment of Acquittal, Motion for New Trial, and Mo-

tion for Arrest of Judgment; (2) Defendant Bladimir Devila's Motion for Judgment of Acquittal; and (3) Defendant Bladimir Devila's Motion for New Trial. Moreover, the motions filed by the other defendants, Lightborne, Vallecilla-Orobio, Preciado, and Davila, are likewise DENIED.

DONE AND ORDERED in Miami, Florida, this 13th day of January, 1988.

STANLEY MARCUS

UNITED STATES CIRCUIT JUDGE,

ACTING AS DISTRICT JUDGE BY

DESIGNATION