[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 05, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-13456

_____

D. C. Docket No. 00-00003-CR-01-WCO-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERONIMO AYALA-GOMEZ,
a.k.a. Momo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 5, 2001)**

Before CARNES, COX and NOONAN*, Circuit Judges.

_____
*Honorable John T. Noonan, Jr., U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

Geronimo Ayala-Gomez appeals his sentence for being found in the United States without permission after removal, in violation of 8 U.S.C. § 1326. The principle issue is whether the district court properly imposed an enhanced sentence because Ayala committed an "aggravated felony," as that term is used in U.S.S.G. § 2L1.2(b)(1)(A) and 8 U.S.C. § 1101(43), before his removal from the United States. What aggravated felony means in § 2L1.2(b)(1)(A) is a question subject to de novo review. *United States v. Drummond*, 240 F.3d 1333, 1334 (11th Cir. 2001). We affirm.

Ayala was convicted in a superior court in Hall County, Georgia of first-degree forgery and entering an automobile with intent to commit theft. The superior court sentenced him for each offense to time served (eight months), to be followed by four years and four months' probation, but it imposed a nominal five-year term of imprisonment, too[1]:

> WHEREUPON, it is ordered and adjudged by the Court that: The said defendant is hereby sentenced to confinement for a period of 5 years and 0 months in the State Penal System or such other institution as the Commissioner of the State Department of Offender Rehabilitation may direct, to be computed as provided by law, HOWEVER, it is further ordered by the Court,

---

[1] We cannot locate the superior court judgment in the record, but the sentencing transcript shows that it was introduced as Government Exhibit 1. We rely on the copy appended to Ayala's supplemental brief.

2

> THAT upon service of 0 years and 8 months of the above sentence, the remainder of 4 years and 4 months may be served on probation PROVIDED that the said defendant complies with the following general and special conditions herein imposed by the Court as a part of this sentence.

A handwritten notation followed: "Credit for time served — all incarceration time served prior to sentencing." Following these convictions, Ayala was deported to Mexico. He came back to Georgia the following year, where local police familiar with him spotted him on his way to visit his mother in Gainesville. He pleaded guilty to violating 8 U.S.C. § 1326, which prohibits being found in the U.S., without the attorney general's permission, after deportation following commission of an aggravated felony.[2]

The default Sentencing Guidelines offense level for § 1326 is level 8. U.S.S.G. § 2L1.2(a). But if the removal follows conviction for an aggravated felony, then the base offense level is 24. *Id.* § 2L1.2(b)(1)(A). The Guidelines explicitly incorporate the definition of "aggravated felony" found in 8 U.S.C. § 1101(43). That section identifies forgery and "theft offenses" as aggravated felonies, but only if the convictions resulted in the imposition of a "term of imprisonment" of at least one year. 8 U.S.C. § 1101(43)(G), (R), (P); *United States v. Guzman-Bera*, 216 F.3d 1019, 1020

---

[2] Ayala's indictment alleges not only that he had been found back in the U.S. without the attorney general's permission, but also that he committed an aggravated felony before he left. Ayala's guilty plea could arguably constitute a concession of the issue presented in this appeal. But the Government does not so assert, and we do not address that question.

(11th Cir. 2000). The term of imprisonment imposed, 8 U.S.C. § 1101(48)(B) tells us, for these purposes "is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." Over Ayala's objection, the district court agreed with the presentence report that the Hall County term of imprisonment was five years, because the four years four months' probation was a "suspension" that § 1101(48)(B) requires us to include in the term of imprisonment. The court accordingly determined that Ayala's forgery and entering-an-auto offenses were aggravated felonies and started with a base offense level of 24.

In this appeal of that ruling, Ayala does not dispute that forgery and entering an auto fit into the categories of offenses described in § 1101(43)(G) or (R). But he does dispute the second requirement for an aggravated felony, which is that the Hall County court imposed a term of imprisonment greater than one year. Ayala points out that the actual sentence of imprisonment was only eight months. Even if we read the sentence through § 1101(48)(B)'s lens, he continues, the sentence was still eight months, because § 1101(48)(B) deems only *suspended* parts of the sentence to count as imprisonment; the Hall County court *probated* all but eight months of Ayala's sentence. And, he concludes, § 1101(48)(B) does not merge probation into the term of imprisonment. *United States v. Banda-Zamora*, 178 F.3d 728, 730 (5th Cir. 1999)

4

(directly imposed sentence of probation, as opposed to one substituted for an imposed prison term, does not count toward the aggravated felony term of imprisonment). The Government counters that the *effect* of the superior court sentence here is identical to the effect of a suspended sentence, and that Ayala's distinction between suspension and probation is therefore illusory.

Both arguments have some force because suspension is not defined in § 1101(48)(B), and it means different things to different courts. In the pre-Guidelines federal system, as the Government points out, suspension of a sentence was simply a procedural step on the way to excusing a defendant from a prison term and allowing him to serve his sentence on probation. *See* 18 U.S.C. § 3651 (1982) (a court in many circumstances "may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best"), *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1945, 1987. The federal system does not appear to have ever had a provision permitting a judge simply to suspend a sentence without imposing probation, even though it did (and does) permit a sentence of nothing but probation in certain circumstances. *See id.*; 18 U.S.C. § 3561 (1994).

In Georgia, by contrast, suspension and probation are twin animals, similar but distinct. Both are mechanisms by which a sentencing court may excuse a defendant

5

from prison time. *See* O.C.G.A. § 17-10-1(a)(1) (Lexis Supp. 2000) ("The judge imposing the sentence is granted power and authority to suspend or probate all or any part of the entire sentence . . . .") Both may be directly imposed subject to conditions whose violation may result in incarceration. *See id.* § 17-10-1(c) (permitting the court, for instance, to require completion of high school diploma equivalent as condition of suspension); O.C.G.A. § 42-8-34.1 (Michie 1997) (procedures for revocation of "probated or suspended sentence"). But suspended and probated sentences are administered differently; a probation officer monitors compliance with probation conditions, while the sentencing court is responsible for enforcing conditions of suspension. *Williams v. State*, 381 S.E.2d 399, 400 (Ga. Ct. App. 1989). And under Georgia law, a suspended sentence is not subject to the panoply of rules surrounding probation. *See* O.C.G.A. § 42-8-39 (Michie 1997) ("In all criminal cases . . . in which the trial judge after imposing sentence further provides that the execution of the sentence shall be suspended, such provision shall not have the effect of placing the defendant on probation as provided in this article [about probation].").

The core inquiry, therefore, is whether suspension in § 1101(48)(B) is limited to its federal meaning of the step intervening between imposition of a prison term and placing a defendant on probation, or imports the Georgia-law use of suspension to mean a distinct kind of extramural supervision. If we use the federal understanding

6

of the term, Ayala's sentence was suspended even though the Hall County court did not use the word, because to the federal mind suspension is a necessary procedural step in excusing part of a term of imprisonment in favor of probationary supervision. On the other hand, if we opt for the Georgia understanding, then we must conclude that all but eight months of Ayala's sentence was probated rather than suspended, and that under § 1101(48)(B) his term of imprisonment was less than a year.

Both the ordinary starting point of statutory construction and the typical second step fail us here. The word "suspension" alone gives us no clues as to which meaning it carries, and no explanatory legislative history has accompanied the addition or the refinement of the prison-term test found in the definition of aggravated felony. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, div. C, §§ 321(a)(3), (10) and 322(a)(1), 110 Stat. 3009-546, 3009-627 to -628 (amending aggravated-felony tests for theft and forgery offenses to provide one-year prison-term test and adding definition of term of imprisonment that includes suspended sentences); Immigration and Nationality Technical Corrections Act of 1994, Pub. L. 103-416, § 222(a), 108 Stat. 4305, 4321 (making theft offenses aggravated felonies if "the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years").

There is, however, a fallback principle for resolving statutory-interpretation dilemmas like this one. Words in federal statutes reflect federal understandings, absent an explicit statement to the contrary, even if a state uses the word differently. *See Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111-12, 103 S. Ct. 986, 991 (1983) (citing desirability of national uniformity in justifying applying federal meaning of "conviction" in a gun-licensing statute); *United States v. Mejias*, 47 F.3d 401, 403-04 (11th Cir. 1995) (federal law deems judgment based on nolo contendere plea to be "conviction" under 21 U.S.C. § 841(b)(1)(B), even if Florida law does not consider a nolo plea to entail conviction). Congress has not directed us to look to the law of the jurisdiction of conviction to determine what suspension means. This federal-meaning-prevails principle of statutory construction accordingly requires that suspension take its federal meaning: a procedural act that precedes a court's authorization for a defendant to spend part or all of the imposed prison sentence outside of prison. Under that definition, § 1101(48)(B) deems the term of imprisonment described in § 1101(43) to include all parts of a sentence of imprisonment from which the sentencing court excuses the defendant, even if the court itself follows state-law usage and describes the excuse with a word other than "suspend."

As it turns out, this principle of statutory interpretation yields a reasonable rule, given the most likely reason that Congress pegged the definition of aggravated felony to the term of imprisonment formally imposed, rather than the period the court actually ordered the defendant to serve. In the pre-Guidelines federal system, as well is in Georgia's present system, the term of imprisonment imposed has a real meaning as the ceiling (in most circumstances) of the time a defendant can spend in prison if he violates a condition of his suspension or probation. *See* 18 U.S.C. § 3653 (1982) ("the court may revoke the probation and require [the defendant] to serve the sentence imposed, or any lesser sentence"; O.C.G.A. § 42-8-34.1(b), (c) (similar). As the maximum time during which the defendant may be punished with incarceration, the term of imprisonment is thus a reasonable measure of the severity of the offense, whatever mechanism the court uses in conditionally excusing the defendant from some incarceration.

We accordingly hold that the terms of imprisonment imposed on Ayala include the parts of Ayala's sentence that the Hall County court probated under Georgia law. Those terms of imprisonment were thus five years each, well above the one-year floor, and the district court correctly determined that the offenses were aggravated felonies. The court thus properly assessed Ayala's base offense level at 24 and reached the proper guidelines range.

Ayala's sentence is accordingly affirmed.

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

As the opinion of the court observes, Ayala-Gomez was actually sentenced to eight months' imprisonment, a term coinciding with the time he had already been in custody. Georgia did not treat his crime as deserving another four years and four months in jail. Ayala-Gomez was put on probation and deported. For a federal court to hold now that Ayala-Gomez had committed an aggravated felony in Georgia for which Georgia imposed a term of imprisonment of five years is to put a federal spin on a matter left to the States as well as to be draconian in a criminal case where venerable precedent tells us it is better to be mild.

The court correctly begins with U.S.S.G. § 2L1.2(b)(1)(A), which incorporates the definition of "aggravated felony" found in 8 U.S.C. § 1101(a)(43). The statute is in fact dispositive. The court is also correct that in a federal statute, federal law controls the meaning of the terms used unless Congress specifies otherwise. *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111-12 (1983); *United States v. Mejias*, 47 F.3d 401, 403-04 (11th Cir. 1995). Here, the relevant statute, 8 U.S.C. § 1101(a)(43) defines "aggravated felony" and states: "The term applies to an offense described in this paragraph whether in violation of Federal or State law . . . ." The statute thus announces an intention to let the various laws of the fifty States determine what is sufficiently serious a crime to justify enhanced federal punishment. Under this

11

language it is Ayala-Gomez's conviction of forgery under the law of Georgia that makes him a candidate for the increased federal sanction. As the crime was a state crime, so too it must be state law that determines whether the term of imprisonment imposed was for "at least one year." The term of imprisonment follows upon the state conviction. To say that Congress wanted a federal meaning for "term of imprisonment" when the term of imprisonment was attached to a state crime is to create a strange beast or chimera. It is also to fail to do justice to a statutory scheme which, in great detail, specifies federal crimes when they are meant, state crimes when they are included, and evinces an intent to respect state determinations when adding a federal sanction to a state conviction.

The reference to the law of a State in § 1101(a)(43) is as distinct, although not as complete, as the statutory reference to state law in 18 U.S.C. § 921(a)(20). *United States v. Willis*, 106 F.3d 966, 967 (11th Cir. 1997). That local variation by jurisdiction is intended has been made indisputable by the interpretation given by the circuits, including this one, to the statutory phrase "term of imprisonment." Does the phrase mean the sentence authorized by the law or the sentence actually imposed by the sentencing court? The answer has been unanimous. It means the sentence actually imposed. *United States v. Maldonado-Ramirez*, 216 F.3d 940, 943 (11th Cir. 2000); *United States v. Guzman-Bera*, 216 F.3d 1019, 1020 (11th Cir. 2000); *United States*

12

*v. Banda-Zamora*, 178 F.3d 728, 730 (5th Cir. 1999); *United States v. Graham*, 169 F.3d 787, 790-91 (3d Cir.), *cert. denied*, 528 U.S. 845 (1999). As sentencing decisions will vary from trial judge to trial judge, especially in States without sentencing guidelines, there can be no question that Congress did not impose a uniform federal standard but sought to adjust the federal enhancement to the gravity of the sentence actually imposed by whatever trial judge had heard the prior criminal case.

The opinion of the court says that the ordinary canons of interpretation fail us. My reading of the statute is that it is clear: it defers, as to the definition here, to the States. But if I am wrong as to the clarity, and the meaning favored by the court is there, the statute is at the very least ambiguous. When a statute is ambiguous, there is a canon of impeccable authority: the rule of lenity. *United States v. Trout*, 68 F.3d 1276, 1280 (11th Cir. 1995). Not out of a sentimental sympathy for criminals, but out of a desire to ensure every individual that the power of the government will be used only to enforce clearly prescribed norms, criminal statutes are read with a requirement that both the crime and its penalty be plainly defined and if "the issue is subject to some doubt," the doubts "are resolved in favor of the defendant." *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 284-85 (1978).

I respectfully dissent.

13