303 Ga. 309
FINAL COPY

S17A1717.  THE STATE v. ADUKA.

BENHAM, Justice.

The State appeals the grant of a petition for a writ of habeas corpus in regard to appellee Jude Ebele Aduka, who is a citizen of Nigeria.  The record shows in April 2007, appellee was arrested after being found with numerous counterfeit goods.[1]  An indictment was handed down in 2009 and thereafter the State offered a plea deal which appellee rejected because of concerns he had about how such a deal would impact his immigration status.[2]  On April

---

[1] According to the State's summary of the facts recited at a pretrial hearing held on June 8, 2011, and at a plea hearing held on April 10, 2012, appellee had been picking up packages sent from China from various metro-Atlanta post offices, triggering the suspicions of an inspector with the United States Postal Inspection Service.  At a February 2007 meeting with an inspector, appellee consented to an inspection of some of the parcels, and they were found to contain counterfeit goods.  A search warrant of appellee's house was executed on April 11, 2007, and appellee was found to be in possession of 171 counterfeit items valued at $43,445.  The authorities also found evidence, such as advertising announcements, that indicated appellee intended to sell the counterfeit goods.

[2] At the June 2011 pretrial hearing, the State offered a sentence of five years, two years of which would be served in prison, plus a $10,000 fine. Appellee declined. The trial court then asked whether appellee would consider a deal from the State that was five years, one year of which would be served in prison and appellee responded in the negative.  At that point, appellee announced he was ready for trial.

10, 2012, however, appellee pleaded guilty to a single count of offer for sale of counterfeit goods in violation of OCGA § 10-1-454.[3] During the plea colloquy with the trial court, appellee stated he understood that entering a guilty plea "may have an impact" on his immigration status and that he understood that his guilty plea "could mean [he] could be deported." The trial court sentenced appellee to five years of "confinement"[4] to be served

---

[3] At the time of the crime and at the time the plea was entered, subsection (c) of that statute provided as follows:

> Any person who sells or resells or offers for sale or resale or who purchases and keeps or has in his or her possession with the intent to sell or resell any goods he or she knows or should have known bear a forged or counterfeit trademark or copyrighted or registered design or who sells or offers for sale any service which is sold or offered for sale in conjunction with a forged or counterfeit service mark or copyrighted or registered design, knowing the same to be forged or counterfeited, shall be guilty of the offense of selling or offering for sale counterfeit goods or services and, upon conviction, shall be punished as follows:
>
> (1) If the goods or services sold or offered for sale to which the forged or counterfeit trademarks, service marks, or copyrighted or registered designs are attached or affixed, or in connection with which they are used, have, in the aggregate, a retail sale value of $10,000.00 or more, such person shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not less than one nor more than five years and by a fine not to exceed $50,000.00 or twice the retail sale value of the goods or services, whichever is greater;
>
> (2) If the goods or services to which the forged or counterfeit trademarks, service marks, or copyrighted or registered designs are attached or affixed, or in connection with which they are used, have, in the aggregate, a retail sale value of less than $10,000.00, such person shall be guilty of a misdemeanor of a high and aggravated nature; or
>
> (3) If a person who violates this subsection previously has been convicted of another violation of paragraph (1) of this subsection, such person shall be guilty of a felony and, upon conviction of the second or subsequent such violation, shall be punished by imprisonment for not less than five nor more than ten years and by a fine not to exceed $100,000.00 or twice the retail sale value of the goods or services, whichever is greater.

[4] Plea counsel requested the trial court to strike the word "confinement" from the sentencing sheet, but the trial court refused.

entirely on probation and ordered him to pay a fine of $9,800. The fine was reduced from $10,000 to $9,800 at the request of plea counsel.

On October 6, 2015, appellee was arrested by federal immigration agents. On December 30, 2015, appellee petitioned for habeas relief concerning his 2012 plea and conviction. On February 25, 2016, while the habeas petition was still pending, an immigration judge issued an order for appellee's removal from the United States due to his counterfeit goods conviction.

In his habeas petition, appellee alleged that plea counsel was constitutionally ineffective because he failed to advise appellee that pleading guilty to a violation of OCGA § 10-1-454 would subject him to mandatory deportation for committing an "aggravated felony" under federal law.[5] At the habeas hearing, which was held on June 9, 2016, appellee presented a witness who was an immigration law expert. The immigration law expert testified that if a person is convicted of counterfeiting and is sentenced to a year or more of confinement, then the crime is an aggravated felony requiring

---

[5] See 8 USC § 1101 (a) (43), subsections (M) and (R). Those subsections define the term "aggravated felony," in pertinent part, as "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000 . . ." or "an offense relating to . . . counterfeiting . . . for which the term of imprisonment is at least one year[,]" respectively. The record shows the federal government withdrew the ground set forth under subsection (M) and based its ground for removal only under subsection (R).

mandatory deportation, regardless of how much time is served in prison or on probation.[6] The habeas court determined plea counsel was deficient by failing to inform appellee that he would be deported if he pleaded guilty to violating OCGA § 10-1-454 (c).[7] The habeas court found plea counsel's informing appellee that he "may" be deported was not reasonable upon a direct reading of the federal statute at issue. For the reasons set forth below, we reverse.

The state of the law on April 10, 2012, the date on which appellee entered his guilty plea, was such that anyone convicted of an offense of counterfeiting for which "the term of imprisonment is at least one year" was guilty of an "aggravated felony" under the Immigration and Nationality Act ("INA") and removable from the United States. See 8 USC §§ 1101 (a) (43) (R) (2011),[8] 1227 (a) (2) (A) (iii).[9] See also Kesselbrenner and Rosenberg,

[6] Appellee could not appear because he was in federal custody, but his affidavit was entered into the habeas record. By the time the habeas hearing took place, this Court had disbarred plea counsel for conduct unrelated to the present case. Habeas counsel averred he was unable to secure plea counsel's appearance and so there was no testimony concerning plea counsel's decision-making regarding appellee's entering his guilty plea.

[7] The habeas court relied on the following case law: Padilla v. Kentucky, 559 U. S. 356 (130 SCt 1473, 176 LE2d 284) (2010); United States v. Ayala-Gomez, 255 F3d 1314 (11th Cir. 2001); Encarnacion v. State, 295 Ga. 660 (763 SE2d 463) (2014); Smith v. State, 287 Ga. 391 (697 SE2d 177) (2010). With the exception of Encarnacion, all of these precedents were available to plea counsel at the time appellee entered his plea in 2012.

[8] The version of 8 USC § 1101 at the time appellant entered his plea and quoted in this opinion was in effect from June 14, 2011 to September 27, 2012. See Pub. L. 111-306, § 1 (a), 124 Stat. 3280;

4

Immigration Law and Crimes § 7:22 (December 2017) ("Aggravated felonies

. . . disqualify the noncitizen from most waivers and forms of relief from

removal, and result in greatly reduced procedural rights in detention and

removal proceedings."). "Under contemporary law, if a noncitizen has

committed a removable offense . . . his removal is practically inevitable . . . ."

Padilla v. Kentucky, 559 U. S. 356 (I) (130 SCt 1473, 176 LE2d 284) (2010).

See also 8 USC § 1228 (b) (5) and (c).

At the time appellee entered his plea, 8 USC § 1101 (a) (48) (B)

(2011) provided as follows:

> Any reference to a term of imprisonment or a sentence with
> respect to an offense is deemed to include the period of
> incarceration or confinement ordered by a court of law regardless
> of any *suspension* of the imposition or execution of that
> imprisonment or sentence in whole or in part.

(Emphasis supplied.)

Because "suspension" is not defined, the statute does not on its face

make clear if and how it applies in the context of those cases where, as here,

a court sentences a noncitizen to a period of confinement for five years but

then probates rather than "suspends" the entire prison term.

---

Pub. L. 112-176, § 3, 126 Stat. 1325.

[9] This Code section was effective as of December 23, 2008 and has not been amended since that date. See Pub. L. 110-457, Title II, §§ 204, 222 (f) (2), 122 Stat. 5060, 5071.

This lack of clarity can be seen in the cases grappling with the consequences of sentences of probation. For example, in <u>United States v. Guzman-Bera</u>, 216 F3d 1019 (11th Cir. 2000), the United States Court of Appeals for the Eleventh Circuit held that when a court imposes probation directly, rather than suspending a sentence of imprisonment, the conviction is not an aggravated felony. Id. at 1021. In reaching this decision, the Eleventh Circuit relied on case law from the United States Court of Appeals for the Fifth Circuit. Id.[10] A year later, the Eleventh Circuit, recognizing that the meaning of "suspension" was not clear, held that the federal definition of "suspension" applied and that the term of imprisonment includes "all parts of a sentence of imprisonment from which the sentencing court excuses the defendant, even if the court itself follows state-law usage and describes the excuse with a word other than 'suspend.'" <u>United States v. Ayala-Gomez</u>, 255 F3d 1314, 1319 (11th Cir. 2001). The Eleventh Circuit stated that the federal law meaning of "suspension" was as follows: "a procedural act that

---

[10] <u>United States v. Banda-Zamora</u>, 178 F3d 728, 730 (5th Cir. 1999) ("when a court does not order a period of incarceration and then suspend it, but instead imposes probation directly, the conviction is not an 'aggravated felony'"). The United States Court of Appeals for the Ninth Circuit has also made a similar ruling. See <u>Vivar-Flores v. Holder</u>, 498 Fed. Appx. 716, 717 (9th Cir. 2012) (where the trial court suspended imposition of sentence and placed the defendant directly on probation, no actual prison sentence had been imposed).

precedes a court's authorization for a defendant to spend part or all of the imposed prison sentence outside of prison." Id.[11]

In order to prevail on a claim of ineffective assistance of counsel, a defendant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30 (4) (644 SE2d 837) (2007). In Padilla v. Kentucky, in holding that the Sixth Amendment right to effective assistance of counsel applies to advice given to noncitizen defendants about the deportation consequences of entering a guilty plea, the United States Supreme Court stated that

[11] The Eleventh Circuit explained some of its reasoning of how it came to this definition as follows:
> [S]uspension is not defined in § 1101(48)(B), and it means different things to different courts. In the pre-[Sentencing]Guidelines federal system, as the Government points out, suspension of a sentence was simply a procedural step on the way to excusing a defendant from a prison term and allowing him to serve his sentence on probation. See 18 USC § 3651 (1982) (a court in many circumstances "may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best"), repealed by Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1945, 1987. The federal system does not appear to have ever had a provision permitting a judge simply to suspend a sentence without imposing probation, even though it did (and does) permit a sentence of nothing but probation in certain circumstances. See id.; 18 USC § 3561 (1994).

(Emphasis omitted.) Ayala-Gomez at 1317-1319.

7

[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear.

559 U. S. at 369.

As shown above, the determination of whether 8 USC § 1101 (a) (43) (R) and 8 USC § 1101 (a) (48) (B) applied to appellee's sentence was not "succinct and straightforward" at the time appellee entered his guilty plea in 2012. Although the answer, once appellee was put into removal proceedings in an immigration court in the Eleventh Circuit, might be clear to an immigration judge or an immigration law expert studied in the decisional law as well as the INA, Padilla v. Kentucky does not require criminal defense attorneys to have the knowledge of immigration judges or experts. Appellee's criminal defense attorney was required to advise him that he "would" be deported only if that result was "truly clear." See 559 U. S. at 369.

Thus, plea counsel did not act outside the wide range of reasonable conduct afforded attorneys who represent criminal defendants, including those defendants who are noncitizens, when he advised appellee that he

8

"could be" deported, rather than informing appellee that he "would be" deported if he entered the plea in question. See, e.g., Ellis v. United States, 806 FSupp.2d 538, 555-556 (E.D. N.Y. 2011). Accordingly, the judgment of the habeas court finding that plea counsel was ineffective is reversed.[12]

Judgment reversed. All the Justices concur.

Decided March 15, 2018.

Habeas corpus. DeKalb Superior Court. Before Judge Johnson.

Sherry Boston, District Attorney, Anna G. Cross, Deborah D. Wellborn, Assistant District Attorneys, for appellant.

Akintunde A. Akinyele; Akinwunmi Doherty, for appellee.

---

[12] We need not and do not decide whether the habeas court's consideration of testimony from an immigration law expert was reversible error.